Caudill Seed & Warehouse against Rose & MMR is the next case for argument. Mr. Larson. May it please the Court, Your Honors Keith Larson for the appellants MMR Farms and Matt Rose. This case really boils down to a single issue. Can a creditor bring a fraudulent transfer claim, settle it, collect on the settlement, and then refile it all over years later? We have the same parties, the same claims, two lawsuits, and two recoveries. So the appellants respectfully request that the district court's order be reversed under either the doctrines of claim preclusion or issue preclusion. Hello. The magistrate's order stated that because of the 2015 judgment against Rose listed specific assets and Rose does not contest their inclusion that there's no conflict over those listed assets and Caudill Seed may avoid Rose's transfer of those assets to satisfy the judgment. So here's my question. Were all of the assets sought here included in that list? And if so, does that inclusion prevent you from arguing that they cannot be reached now? No, Your Honor. To answer your question, not all of the property, and if I'm understanding the question correctly, is the question was all the property that is being sought to be set aside, all of those transfers, were they included in the pre-bankruptcy transfers? Yeah, in other words, yeah, I mean, and is it clear in the record which assets were transferred prior to the settlement in bankruptcy court, particularly as to the be necessary to present evidence to that determination? There are three items of property that there may be an issue of whether or not they were transferred post-bankruptcy. There are, and we've conceded two of the three in our briefs to this court. Right, right. The two land transfers, one occurred in 2013 and another in 2014, we've conceded. Now on the issue of the farm equipment, I had cited the in-ray taxman clothing cases, possibly just having this court decide the factual issue itself. However, a remand may be appropriate in that instance because if you look at that 2014 federal asset report, at least half of the two million dollars of property itemized in there was put into service in 2010. Mark Rose did not file his bankruptcy until May of 2011, so therefore this property was necessarily transferred pre-bankruptcy. And then, well, yeah, I'm sorry, go on, go on. And then with regard to the remainder of the property as we look beyond May 2011, it's really unclear as to whether there was any equity in that property and whether or not Matt Rose paid anything of reasonably equivalent value in exchange therefore. I think the record is very brief. It appears that counsel for Codd L. Seed is asking Matt Rose whether or not there was reasonably equivalent value given for the property transferred pre-bankruptcy, but it's not entirely clear whether he's asking him if there was value given for the property transferred post-bankruptcy. Right, that's where my problem is, you see, because the parties dispute whether the personal you know, even whether the personal property falls within the pre- or post-settlement categories. And I don't know, you know, if the record makes that clear. Yes, Your Honor, and we argued in our brief that the burden is on the the plaintiff, in this case Codd L., and we believe they have not met their burden with regard to the farm equipment, so we've asked for a reversal, but I also agree with Your Honor that perhaps a remand might be necessary to have some evidence on this issue. Well, we'd have to have fact-finding, it seems to me, on that issue, if this is so. All right, well, thank you. Thank you, Your Honor. So, with regard to claim preclusion, there are three elements that the appellants must show in order to succeed in a claim preclusion case. They would have to show identity of parties, identity of the claims, and a final judgment on the merits. With regard to the claims, as we've already discussed, Codd L. concedes, and the District Court found that with the exception of two land transfers and the farm equipment, all of the other transfers occurred pre-bankruptcy. That's a total of 272 acres. And in the pre-bankruptcy fraudulent transfer action, Codd L. was a coplainant with the trustee. The Court's familiar with the history, but right after Mark Rose filed for bankruptcy, Codd L. filed its fraudulent transfer claim. It then amended the claim, and it was amended a third time to add the trustee as coplainant. And that's important. It's not that the trustee came in and kicked out Codd L. and said, no, you can't pursue these claims. They were a coplainant in the final amended complaint. And counts four and five of that complaint seek to set aside 272 acres, specifically referred to as the Somerville properties, and importantly, it says any and all pre-bankruptcy transfers. The trustee did not abandon any of these assets. Codd L. argues in its brief that there might be some ambiguity. What happened to that claim? I gather it was settled. Now, usually a settlement is accompanied by a release. Did either the trustee or Codd L. seed release MMR? The bankruptcy court found that the parties were released, that MMR was released. No, that's not what the bankruptcy court found, and one doesn't find something about a release. One either introduces a release or not. I went looking for the release. It turns out that MMR released the trustee and not the other way around. There was a release, but it was by MMR. And without a release by the trustee, how can the settlement end this claim? Well, your honor, what I was referring to was the 2013 ruling from the bankruptcy court where the... No, there's either a release or there isn't. The bankruptcy judge said that there was a release, and that turns out to be correct. It was a release by MMR, but what MMR needs is a release by the trustee or by Codd L. seed. Have I missed something in the record? Is there a release by the trustee of MMR or by Codd L. seed of MMR? Well, your honor, and I did notice in the record that when the trustee filed... That question can be answered yes or no? No, your honor. Okay. And I did notice in the record, your honor, that the motion to settle and compromise all and release to it, and I went looking in the bankruptcy court docket, and it doesn't appear that the trustee actually attached that document to its motion to release. But this court has held in the In re Met Elwood case, and it recognized that trustee creditors... A trustee is a creditor's representative. Of course, but there was no judicial decision, and there was no release. So what precludes bringing the same claim again? When you get a settlement, when a claim is settled, it can be brought again unless there's a release. And you have now agreed that neither the trustee nor Codd L. seed released MMR. Well, you should have negotiated for that as part of the settlement. You didn't get it. That seems to be, you know, pretty much that. Well, your honor, I don't think there's a release document that was necessarily attached to the motion to settle and compromise claims. But this court and other circuits have said that an order approving a bankruptcy rule 9019 final judgment is race judicata against other creditors. So in the motion, the trustee asks for a release, makes mention of an attached exhibit, which appears to be the release. The bankruptcy court enters an order approving the motion to approve settlement, and under 9019... And the thing that was approved was a settlement that did not include a release by the trustee or Codd L. seed. Do you have any legal authority for the proposition that a settlement that does not include a release by the party who then sues again binds that party? Well, I think it comes down to claim... No, that too can be answered yes or no. If the answer is no, you can explain why you think the absence of authority is not dispositive. But is there any authority? I looked for it, didn't find any. Your honor, I didn't come across that either. Now, now you can explain why you think the absence of authority is not dispositive. Thank you, your honor. I don't think it is dispositive because we're talking about claim preclusion and issue preclusion. And there's no dispute that we're talking about the same claims and the same parties. Where I think your honor's getting at is whether there's a final judgment on the merits. Well, you can't have issue preclusion because that requires an actual resolution by the court of some issue necessary to the resolution of the case. And no issue was released produces claim preclusion. And that's why I'm looking for authority. And the absence of any seems to me telling. Your honor, on the point of issue preclusion, I do think that there was a necessary finding that the bankruptcy court... There was no finding by the bankruptcy court necessary or otherwise. I mean, this is pretty basic black-letter law about what claim... about what issue preclusion is. This is claim preclusion or nothing. And, your honor, what we argued in our briefs and I think the bankruptcy court laid out when it decided at 727 motion there and there was a motion to reconsider after the court had already denied discharge under 727. And in the order on the motion to reconsider, the bankruptcy court said that the debtor did not... there was no evidence or not sufficient evidence to show that the debtor intended to hinder, delay, or defraud creditors. And that's in the bankruptcy court's order and that is the same exact element or part of the proof that the appellees have with regard to a fraudulent transfer claim. So we have a bankruptcy court saying back in 2013 that Mark Rose... there is not sufficient evidence that Mark Rose intended to hinder, delay, or defraud his creditors. And that same exact issue is being litigated right now. So I would argue that on that basis that there is issue preclusion. And with regard to claim preclusion, the final judgment on the merits came when the bankruptcy court approved the bankruptcy rule of 1919 settlement. I think this case is analogous to the Fifth Circuit case in Enrage or Brawl to Resources. In that case, almost procedurally identical, you had a plaintiff that objected to a settlement that the defendant entered into with the trustee and the court overruled the objection, approved the settlement, and then the plaintiffs come and try and sue the defendants on the same exact theories as the trustee. And the court said that there's race judicata. You can't re-litigate those claims because the trustee steps into the shoes of all the other creditors. And this court found the same in Enrage and Med-El Wood. And we cite the American Equipment case as well, saying that orders adopting settlements are bars to re-litigation. They're not, quote, idle ceremonies is what this court found. And with this, unless there are any questions, Your Honor, I would reserve the balance of my time for rebuttal. Mm-hmm. Certainly, counsel. Mr. Byrd. May it please the court. Good morning. My name is Scott Byrd and I represent the Applee Caudill Seed and Warehouse Company. This case is not as complicated as the appellants are trying to make it. It's really rather simple. Caudill Seed is attempting to collect a debt against assets that were fraudulently transferred but still controlled by the debtor, Mark D. Rose. Mark Rose has struggled furiously not to pay this debt to Caudill Seed for the past seven years. He counter-sued my client. He transferred... Now, look, forgive me, but when issuing, when the court issued the discharge in June 2014, the court held that Caudill failed to prove by a preponderance of the evidence that Rose possessed the intent to defraud in the conveyances. How can Caudill establish that the conveyances were fraudulent in the present case, absent an intent to defraud? Well, Your Honor, I think it's important to note that in the bankruptcy case, Caudill Seed was proceeding on a 2011 judgment. In the present case, in the case that's before the court, Caudill Seed was proceeding on a post-bankruptcy judgment, a judgment that was obtained as a result of Mr. Rose's breach of the reaffirmation agreement. And so I think we're talking about two separate claims here, two separate cases. The most important point I'd like to point out is that Mr. Rose, Mark Rose, continued to maintain control over this farming operation and its cash flow. And Mr. Rose, what he's attempting to do through his son and through MMR Farms, he is attempting to use the bankruptcy code as a shield for ongoing fraud. Both the magistrate judge and the district court properly applied Indiana collection law and federal bankruptcy law in ruling that Caudill Seed could execute against certain specified assets. And notably, it was not disputed in the lower court that Mr. Rose transferred these assets without consideration and he retained control over these assets. And so the district court properly held that Caudill Seed has standing and could enforce its 2015 judgment against these assets, these assets that were currently controlled by the debtor, Mark D. Rose. Considering only the assets that were transferred after the date of the settlement agreement and excluding the personal property which Rose claims were transferred before that time, are those assets sufficient to satisfy the Well, I don't know at this point because the problem is there's a question of whether there's equity, there are other priority lien holders and some of the assets that were transferred, so we never got to the stage of determining the existence of equity and how much Caudill Seed would be entitled to if it executed against those assets. But well, I'd point out that the appellants can provision in the bankruptcy code that preempts Caudill Seed's rights under Indiana law. No case cited by the appellants contemplates the fact pattern that we have here, where the assets remained under the debtors control following the bankruptcy. The bankruptcy trustee settlement agreement settlement agreement simply does not produce the inflated legal effect that's in the appellants. It cannot be interpreted as the bankruptcy court's official sanction of Mr. Rose's transfers as non-fraudulent. It can't be interpreted as a final judgment on the merits and the settlement agreement cannot be interpreted as blanket immunity for Mark Rose's legal transgressions, whether they be past, present, or in the future. Appellants claim preclusion and issue preclusion arguments simply must fail because they're not applicable to the case. First of all, the claim preclusion argument, it's debatable whether or not this was even presented to the lower court. It has been presented on appeal and so I did address that in our brief, but there is no identity of the causes of action and that's the first element that must be met. Again, Caudill seed in the bankruptcy action, in the first action, they were pursuing a 2011 judgment and in the end we were allowed to go to trial on the issue of whether Mark D. Rose was entitled to a discharge under the Bankruptcy Code 727A. The case before the lower court, we proceeded on a 2015 judgment and our cause of action was based upon Indiana state law, the fraudulent transfer law. Claim preclusion also doesn't apply because there was no final judgment on the merits. The trustee's agreement with Mark Rose is not a final judgment on Caudill Seed's claims that these assets were transferred fraudulently. Furthermore, issue preclusion is not applicable. These are distinct issues. The bankruptcy issue, was the debtor entitled to a discharge in 2011? The issue in the lower court, the district court, the issue there was whether the creditor could execute against assets that were fraudulently transferred but still controlled by the debtor in 2015. The appellants are seeking to confuse the definition of claim and issue. They're attempting to bring in collateral issues in an effort to conjoin the two and the bottom line is that there's distinct issues here as well as distinct claims. So in sum, Your Honor, just the district court properly found that Caudill Seed was entitled to execute against fraudulently transferred assets. These cannot be used as the appellants intended here. It could not be used as a shield against fraudulent activity. So I would ask this panel to affirm the district court's ruling on this matter. Thank you, Mr. Brewer. Thank you. Anything further, Mr. Larson? Briefly, I'd just like to address the alter-ego argument that was raised by the appellees. The cash withdrawals that they referenced in their motion to avoid, they even say were illustrative. They're not seeking to claw those back and they again were all pre-bankruptcy or for the most part pre-bankruptcy transfers. And the trustee said in the bankruptcy case that despite years worth of investigating, Caudill has still yet to find any direct or circumstantial evidence of fraud. And then I want to close just by considering some general public policy and equity arguments. One of the primary ways this court knows that trustees bring assets back into estates is to bring these fraudulent transfer claims and then rely upon hopefully expeditious settlement so that they're not spending all the estate's resources litigating these claims. And after this case, if the district court's decision is allowed to stand, it sort of begs the question, why would anyone ever settle with the bankruptcy trustee going forward? Because these settlements can be ripped apart years later. And it ignores the fact that MMR has paid nearly two million dollars since 2009 on these real estate transactions and has continued to pay on these real estate contracts. So at a minimum, if they are going to be set aside, MMR Farms and Mr. Rose should receive credit for the payment on those installments. And unless the panel has any further questions, I would just ask that the district court's order be reversed. Thank you very much, counsel. The case is taken under advisement and the court will take a five-minute recess before calling the fourth case.